**The STATE of Texas, Appellant,**

v.

**Dusty WALDROP, Appellee.**

No. 03–99–00053–CR.

Court of Appeals of Texas, Austin.

Dec. 9, 1999.

Before Chief Justice ABOUSSIE,
Justices B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

The State appeals the suppression of statements by Dusty Waldrop relating to his arrest for the offense of driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04 (West 1994). At pre-trial conference, the trial court ordered the suppression of Waldrop's statements regarding where he had been, how much he had been drinking, and whether he was drunk. The State argues Waldrop's statements were made voluntarily and should have been admitted. We agree and will reverse the suppression order.

## BACKGROUND

On August 8, 1998, Austin Police Department Detective Paul Johnson stopped Waldrop sometime after midnight for driving the wrong way down a one-way street. Detective Johnson asked Waldrop to walk to the back of his truck. The detective testified that Waldrop swayed slightly while standing behind his truck and that he asked Waldrop whether he had been drinking. Waldrop responded that he had consumed a couple beers. Detective Johnson testified that Waldrop told him he had been at Antone's, a local blues club. Waldrop implored, "Just let me get a ride home, I'll quit driving." Waldrop then volunteered that he knew he was drunk. On cross-examination, Detective Johnson was unable to remember the exact questions he asked Waldrop. He also was unable to recall which one of Waldrop's statements came first and whether Waldrop's admission that he was drunk was in response to a question.

Waldrop was not given *Miranda* warnings before his conversation with Johnson. He also was not under arrest or handcuffed. After listening to Waldrop's statements, Johnson called Officer Janet Stephenson and Officer Terrell Johnson to administer field sobriety tests. In response to Detective Johnson's call, Officer Johnson arrived at 1:40 a.m. and testified that Waldrop's speech was slurred and he swayed while standing. Officer Johnson then arrested Waldrop after administering field sobriety tests and *Miranda* warnings.

Waldrop filed a pre-trial motion to suppress evidence relating to his arrest. Although the motion did not expressly seek the suppression of his statements to Detective Johnson on *Miranda* grounds, this issue was raised at the hearing on the motion. The trial judge suppressed three types of statements: what alcohol Waldrop had consumed, where he had been, and his admission that he was drunk. The statements were suppressed because Detective Johnson did not first provide *Miranda*

warnings to protect Waldrop's privilege against self-incrimination.

## DISCUSSION

The only issue before us is whether a roadside stop sufficiently places a driver in custody to require the *Miranda* warnings necessary to protect an individual's Fifth Amendment privilege against self-incrimination. We begin by reviewing the *Miranda* decision to specify the dangers that concerned the Supreme Court. The opinion traced the history of the privilege against self-incrimination and stressed that the privilege underlies the respect for individual rights upon which our criminal justice system is based. *See Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court warned that

> without proper safeguards the process of in custody interrogation of persons suspected or accused of crime contains inherent pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely.

*Id.* at 467, 86 S.Ct. 1602. This description of "inherent pressures" and compelled testimony shows that the *Miranda* court's primary concern was that suspects may be coerced into making self-incriminating statements.

*Miranda* also provides guidance on what evidence is admissible at trial. Statements given freely and voluntarily are admissible in evidence. *See id.* at 478, 86 S.Ct. 1602. In distinguishing situations which require safeguards to protect the privilege against self-incrimination from those that do not, the opinion pointed to isolation and intimidation as key aspects of an interrogation that undermines an individual's ability to speak voluntarily. *See id.* at 448–55, 86 S.Ct. 1602. The Supreme Court concluded that protections against self-incrimination "must be given when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." *See id.* at 477, 86 S.Ct. 1602.

■ Article 38.22 of the Code of Criminal Procedure codifies both *Miranda's* system of protecting a suspect against self-incrimination and its distinction between voluntary statements and compelled confessions. *See* Tex.Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp.1999); *Stahle v. State*, 970 S.W.2d 682, 690 (Tex.App.— Dallas 1998, pet. ref'd). Under *Miranda* and article 38.22, Waldrop's privilege against self-incrimination required protection if he was in custody or deprived of his freedom of action in any significant way. *See Miranda*, 384 U.S. at 477, 86 S.Ct. 1602; Tex.Code Crim. Proc. Ann. art. 38.22.

### Standard of Review

■ In reviewing motions to suppress, appellate courts should afford almost total deference to trial courts' rulings on "mixed questions of law and fact" if the resolution of those ultimate questions *turns on* an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *See id.* Here the admissibility of the statements does not turn on the credibility of the witnesses, but on the application of the *Miranda* doctrine. The trial judge found the witnesses credible yet held that the statements were inadmissible. Consequently, the decision to suppress need not be afforded total deference under *Guzman*, and we will review the application of the law *de novo*.

### Custodial Interrogation

■ Waldrop's statements that he had had a few beers, that he had been at Antone's, and that he knew he was drunk tend to incriminate him for DWI. The Supreme Court interpreted *Miranda* in the context of self-incriminating statements at a roadside traffic stop in *Berkemer v. McCarty*, 468 U.S. 420, 422–23, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). To assess the admissibility of self-incrimina-

ting statements elicited from a motorist during a routine traffic stop, courts are obliged to consider whether the questioning can be considered a "custodial interrogation." *See id.* at 435, 104 S.Ct. 3138. Because Waldrop's self-incriminating statements were made after Detective Johnson stopped him for a routine traffic violation, *Berkemer* controls our analysis.

■ If statements are not made as the result of custodial interrogation, the requirements of *Miranda* and of article 38.22 do not apply. *See Holland v. State,* 770 S.W.2d 56, 58 (Tex.App.—Austin 1989), *aff'd,* 802 S.W.2d 696 (Tex.Crim. App.1991). A non-custodial, voluntary, oral statement is admissible at trial. *See Kelley v. State,* 817 S.W.2d 168, 173 (Tex. App.—Austin 1991, writ ref'd). Under *Kelley,* if Waldrop's statements were not the result of custodial interrogation, they are admissible.

■ Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. In *Berkemer,* the Supreme Court considered facts quite similar to ours and held that the driver's statements were admissible and not the result of a custodial interrogation. After an officer stopped a vehicle for weaving in and out of its lane, the motorist could not complete a sobriety test. *See Berkemer,* 468 U.S. at 423, 104 S.Ct. 3138. The driver then told the officer that he had drunk two beers and smoked marihuana. *See id.* The court admitted both statements, holding that "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*" *See id.* at 440, 104 S.Ct. 3138. Two factors were determinative: the temporary and brief nature of such stops and the absence of a "police dominated" atmosphere. *See id.* at 437–39, 104 S.Ct. 3138. These factors stand in direct opposition to the isolation and intimidation that concerned the court in *Miranda. See Miranda,* 384 U.S. at 477, 86 S.Ct. 1602.

■ Following the holding in *Berkemer,* we conclude that Waldrop's statements should not have been excluded by the court below. Detective Johnson's actions detaining Waldrop were temporary like the acts of the officer in *Berkemer.* Johnson requested that Waldrop walk to the back of his truck and asked whether he had been drinking. In *Berkemer* the defendant was held not to be in custody when he volunteered certain statements after performing a field sobriety test. *See Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138. Here, no field sobriety tests had even been ordered at this point. As in *Berkemer,* Detective Johnson detained Waldrop along a public street and not in a police dominated atmosphere. The holding of *Berkemer* that the motorist was not in custody under such factually similar circumstances persuades us that the trial court erred in suppressing the statements at issue here.

Texas cases solidify our conclusion that the trial court erred in excluding Waldrop's statements. On similar facts, the Court of Criminal Appeals held in *State v. Stevenson* that statements volunteered at a roadside investigation for DWI are admissible into evidence. *See* 958 S.W.2d 824, 829 (Tex.Crim.App.1997). The defendant claimed his wife was driving when the couple was involved in a one-car accident with a road sign. *See id.* at 825. The investigating officer discovered that Stevenson's wife was injured in a manner consistent with her being the passenger and became suspicious that Stevenson had been driving. *See id.* The court held that the officer's change of focus from investigating the accident to investigating a possible DWI did not subject the defendant to a custodial interrogation. *See id.* at 829; *accord Hutto v. State,* 977 S.W.2d 855, 858 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (field sobriety testing and questioning did not convert roadside stop into an arrest). Applying *Stevenson,* we hold that Waldrop's statements were not the result of a custodial interrogation and are therefore admissible even in the absence of a

**840**

*Miranda* warning. *See Stevenson,* 958 S.W.2d at 829.

## CONCLUSION

We conclude that Waldrop's statements were made voluntarily to Detective Johnson when Waldrop was not under custodial interrogation. The trial court erred by failing to follow the law announced in *Berkemer* and *Stevenson.* We reverse the order suppressing Waldrop's statements and remand the cause to the trial court for further proceedings.