# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00203-CR

**The State of Texas, Appellant**

**v.**

**James David Garner, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY**
**NO. 70,224, HONORABLE HOWARD S. WARNER II, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State appeals an order granting appellee James David Garner's motion to suppress statements he made to a police officer. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2005). The State asserts that the trial court erred by finding Garner's statements to be involuntary. We agree that the statements were voluntarily made, but conclude that the trial court's order should nevertheless be affirmed in part.

When reviewing a trial court's ruling on a motion to suppress, we defer to the court's factual determinations but review *de novo* the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in the light most favorable to the court's ruling and, if the court did not make explicit findings of fact, we assume that the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). We will sustain the court's order if it is

reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Department of Public Safety Trooper Dorinesha Livingston was dispatched to the scene of a one-car accident. Based on her observations and training, Livingston determined that the vehicle had been traveling at an unsafe speed when it struck a guardrail. The driver, Garner, was being treated by paramedics. Garner's elbow and ankle were broken, the latter so severely that his foot and ankle were later amputated.

Livingston testified that she spoke to Garner briefly at the accident scene. Garner's eyes were bloodshot and his speech was slurred, and Livingston noticed an extremely strong odor of alcoholic beverage. Garner told the trooper that he had swerved to miss a deer, but Livingston said that she saw no evidence of this. Livingston asked Garner if he had been drinking. She said he told her that he had consumed three beers earlier that day.

About one hour later, Livingston approached Garner at the hospital while he was lying on a treatment table and receiving medical attention. The trooper knew that Garner was in pain and assumed that he was under the influence of some kind of medication. She asked him his name and birth date to determine whether he was coherent. Satisfied by his answers that he was, Livingston read Garner his *Miranda* rights, receiving an affirmative response each time she asked him if he understood. *See Miranda v. Arizona*, 384 U.S. 436 (1966). She then read the statutory warning required when asking for a blood specimen, commonly referred to as the DIC-24 form, which among other things informs the subject that he is under arrest. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2005). Garner did not understand this warning. Livingston testified, "I kept

2

reading that thing over and over and over and he said he did not understand. So I gave it to him to read it and he still said he didn't understand it." Garner refused to give a specimen. Livingston then asked Garner what he had been drinking. She testified that he told her, "I had three margaritas between four and five p.m. Garner also stated he had two or three beers at an unknown time."

Trooper Livingston testified that she wanted to arrest Garner at the hospital, but "technically he wasn't under arrest because I couldn't arrest him" in light of his physical condition. She explained, "He was in custody. At that point in time I didn't put the handcuffs on him because he was in extreme pain. I went and spoke to one of the admitting doctors and they said they were going to admit him that night, so obviously I wasn't going to throw handcuffs on him. I had to talk to APD to see when they would release him. The very next day they weren't going to release him because I guess he had had surgery or something like that."

Garner testified that he remembered the accident but did not remember speaking to Livingston at the scene. He did remember speaking to the trooper at the hospital:

> I remember at the point in time when she was trying to talk to me they were trying to figure out my foot, so there was a doctor at one end of the bed that pulled—they were trying to pull this foot and reset it, which wasn't going to happen. And so while they were working on me she was talking to me and I'm thinking—all I'm thinking at that point in time is I've got somebody working on this elbow and somebody working on my foot and—and I'm going, "Okay. Yes. Yes." And then she finally—she was reading me this pink piece of paper and I said, "I can't—I can't understand, I can't hear," whatever it was. I said, "Can I see this piece of paper and try—can I just try to read this? I'm not hearing you." So I'm laying there and I'm looking and I just said, "I can't do this. I'm sorry."

Garner added, "[M]y ankle was broken at that point in seven places and somebody is tugging on that foot on one end and someone is talking in your ear up here, you're not really paying much attention."

He remembered telling the officer that he had three beers that day, but did not remember telling her that he had consumed margaritas.

Neither party offered argument at the conclusion of this testimony, and the court took the motion to suppress under advisement. Two days later, the court wrote a letter to counsel telling them that the motion was granted with respect to Garner's statements to Livingston.[1] The court did not make formal findings of fact, but the letter to counsel stated that "since the patient/defendant was under pain and medication, and does not recall the conversation, I am suppressing any statements made by him at the scene and the hospital."

Among other grounds, Garner's motion to suppress alleged that his statements to Livingston were not "consensual." Construing this as a challenge to the voluntariness of the statements, the State urges that Garner's statements to the trooper were not shown to be involuntary. The test for voluntariness is whether the statement was the product of an essentially free and unconstrained choice by its maker. *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). The State argues that there is no evidence of police coercion or other official overreaching so as to render Garner's statements involuntary. *See Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

The State relies on the opinion in *Perry v. State*, 158 S.W.3d 438 (Tex. Crim. App. 2004). In that case, a prosecution for capital murder, the defendant confessed to a police officer at the hospital where he was being treated following an automobile accident that ended a high-speed

---

[1] The suppression motion also challenged the admissibility of Garner's hospital records. At the hearing, Garner's attorney conceded that the records were admissible. In light of this concession, the court overruled the motion to suppress with regard to the records.

police chase. *Id*. at 439. The medical evidence was that Perry's arm was cut to the bone, and he had a large knot on the back of his head. *Id*. at 443-44. Perry testified that he had been drinking heavily and taking pills, and that his arm "hurt pretty bad." *Id*. at 445. On appeal, Perry complained of the trial court's refusal to instruct the jury not to consider his confession if it was given involuntarily as a result of intoxication and illness resulting from the loss of blood. *Id*. at 446. The court of criminal appeals held that "the evidence of appellant's intoxication and injury does not raise any constitutional voluntariness issues because this evidence does not involve any police coercion or other official overreaching." *Id*.

In light of the holding in *Perry*, we agree with the State that Garner's injury, intoxication, and medication, and his inability to remember some of the statements he allegedly made, do not constitute evidence of police overreaching or coercion so as to support a finding of involuntariness. Assuming this was the basis for the trial court's suppression order, we must nevertheless sustain the order if it is reasonably supported by the record and correct on any other theory of law applicable to the case. *Willover*, 70 S.W.3d at 845; *Ross*, 32 S.W.3d at 855-56; *Romero*, 800 S.W.2d at 543.

Viewing the evidence in the light most favorable to the suppression order, we find no legal basis for suppressing any statements Garner made at the scene of the accident. Garner was not at that time under arrest or in custody, and therefore neither *Miranda* nor article 38.22 apply. Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). A voluntary, noncustodial, oral statement is admissible at trial. *State v. Waldrop*, 7 S.W.3d 836, 839 (Tex. App.—Austin 1999, no pet.).

We reach a different conclusion, however, with regard to any statements Garner made at the hospital. The evidence, viewed in the light most favorable to the court's order, shows that

5

these oral statements were the product of custodial interrogation and hence inadmissible under the terms of article 38.22, section 3. Tex. Code Crim. Proc. Ann. art. 38.22, § 3.

Custodial interrogation is questioning initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of freedom of action in any significant way. *Ramirez v. State*, 105 S.W.3d 730, 740 (Tex. App.—Austin 2003, no pet.) (quoting *Miranda*, 384 U.S. at 444). A person is in custody if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322-23 (1994)). The court of criminal appeals has identified four general situations which may constitute custody, one of which is when there is probable cause to arrest and the law enforcement officer does not tell the suspect that he is free to leave. *Id*. at 255. The officer's knowledge of probable cause must be manifested to the suspect. *Id*. Custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

Livingston had spoken to Garner at the scene of the accident and noticed his slurred speech, bloodshot eyes, and strong odor of alcoholic beverage. Under the circumstances, the trooper had probable cause to believe that Garner was guilty of an offense involving the operation of a motor vehicle in a public place while intoxicated. Livingston's knowledge of probable cause was manifested to Garner when she read to him, more than once, the statutory DIC-24 warning informing him that he was under arrest. Although Livingston testified that Garner was not "technically" arrested, her subjective belief is irrelevant. *Id*. at 254. We conclude that under the circumstances shown, a reasonable person in Garner's position would believe that he was under restraint to the

6

degree associated with an arrest. *See Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.); *Bell v. State*, 881 S.W.2d 794, 800 (Tex. App.—Houston [14th Dist.], pet. ref'd); *State v. Williams*, 814 S.W.2d 256, 259-60 (Tex. App.—Austin 1991), *aff'd*, 832 S.W.2d 52, 53 (Tex. Crim. App. 1992). Asking Garner at the hospital whether he had been drinking was, under the circumstances, a question reasonably likely to elicit an incriminating response and hence interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *Ramirez*, 105 S.W.3d at 741.

Although Garner was advised of his rights before he was questioned at the hospital, there is no evidence that his statements to Livingston at the hospital were recorded as required by statute. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3. No exception to the recording requirement was shown by the State. Therefore, the trial court properly ordered the suppression of these oral statements.

The trial court's suppression order is affirmed with regard to Garner's statements at the hospital and reversed with regard to Garner's statements at the scene of the accident, and the cause is remanded to the trial court for further proceedings.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   January 26, 2006

Do Not Publish