

# NUMBER 13-08-00185-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**THE STATE OF TEXAS,** **Appellant,**

**v.**

**DONALD GLENN WERLLA,** **Appellee.**

---

### On appeal from the 94th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION ON REHEARING

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion on Rehearing by Justice Garza

After considering the motion for rehearing and motion for rehearing en banc filed by appellant, the State of Texas, we deny the motions; however, we withdraw our opinion and judgment of August 29, 2008, and substitute the following to make nondispositive clarifications.

## I. INTRODUCTION

The State appeals the trial court's granting of a motion to suppress evidence in favor of appellee, Donald Glenn Werlla.  By one issue, the State contends that the trial court erroneously granted Werlla's motion to suppress because the statements made by Werlla were voluntarily made and not the result of a custodial interrogation.  We affirm the trial court's judgment with respect to Werlla's statement regarding ownership of the discovered pants and crack cocaine.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Werlla was charged by indictment with possession of less than one gram of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (Vernon 2003); *see id.* § 481.102(3)(D) (Vernon Supp. 2007) (listing cocaine in the "Penalty Group 1").  On October 31, 2007, Officers Jose Flores and Ismael Ybarra were dispatched to a Travel Lodge Inn on 4414 Surfside Boulevard in Nueces County, Texas, to investigate a disturbance.  After speaking with Ben Codge Patel, the manager of the inn, Flores and Ybarra determined that the disturbance was coming from room 114.[1]  The manager also identified the occupants of the room, one being Werlla.  Flores ran a records check on Werlla and discovered that he had an active parole warrant from Austin, Texas.  Because he had an active parole warrant, Flores and Ybarra entered room 114 and placed Werlla under arrest.

After he was placed in handcuffs, Flores and Ybarra requested consent to search Werlla's belongings, to which Werlla responded, "[g]o ahead."  Flores and Ybarra also

---

[1] Officer Flores testified that dispatch originally notified him that the disturbance came from room 109. However, after searching room 109, the officers found that the room was empty.  Patel then notified the officers that loud disturbances typically emanated from room 114.  Patel testified at the suppression hearing that Werlla had a contract to be in room 107.

discovered a woman in room 114 with Werlla, but they did not request to search her belongings. In order to determine which piles of clothing were Werlla's, Flores and Ybarra asked him whether the item was his, to which he would answer "yes" or "no." When searching the top of Werlla's pants, Flores and Ybarra found what they believed to be crack cocaine. Flores and Ybarra did not ask Werlla if the crack cocaine was his. Moreover, at no point did Flores or Ybarra read Werlla his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). On December 6, 2007, Werlla was charged with possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(a), (b), 481.102(3)(D).

On January 23, 2008, Werlla filed a motion to suppress the search of the hotel room, alleging that the search was illegal due to lack of probable cause and that no one with authority gave the police consent to search the hotel room. Werlla also contended the evidence seized by Flores and Ybarra was "extracted subsequent to [an] illegal search as fruit of the poisonous tree." On March 12, 2008, after a pre-trial hearing, the trial court granted Werlla's motion to suppress. Also on March 12, 2008, the trial court issued findings of fact and conclusions of law setting forth the above facts and concluding that Werlla was lawfully arrested and Werlla's consent to search was valid, but that the questioning conducted by Flores and Ybarra regarding Werlla's belongings amounted to a custodial interrogation which was prohibited since Werlla had not been provided *Miranda* warnings. *See Miranda*, 384 U.S. at 444.

On March 14, 2008, the State filed its notice of appeal pursuant to article 44.01(a)(5) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2007) (providing, among other things, that the State may appeal an order

3

of the trial court granting a motion to suppress evidence "if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case"). This appeal ensued.

## III. STANDARD OF REVIEW

"The job of an appellate court in cases" of motions to suppress evidence "is to review the decision of the lower court for an abuse of discretion." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *accord Montoya v. State*, 810 S.W.2d 160, 174 (Tex. Crim. App. 1989). "We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Dixon*, 206 S.W.3d at 590; *accord Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). "We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law . . . to those facts." *Dixon*, 206 S.W.3d at 590 (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). "[G]reat deference is accorded to the trial court's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007).

## IV. ANALYSIS

By its sole issue, the State contends that the statements made by Werlla identifying the pants containing the crack cocaine as his own were voluntarily made and not the subject of a custodial interrogation; therefore, no *Miranda* warnings were necessary, and the statements should be admitted into evidence. Werlla contends that the statements

4

made were the result of custodial interrogation, thus requiring *Miranda* warnings to be issued. Because *Miranda* warnings were not issued, Werlla contends that the statements are inadmissible and evidence regarding the discovery of the crack cocaine in his pants should be suppressed because it was "the fruit of the poisonous tree."[2]

### a. Custody

"[T]he prophylactic warnings required by *Miranda* do not attach until the officer has objectively created a custodial environment and has communicated to the accused his intention to effectuate custody to the accused himself." *Abernathy v. State*, 963 S.W.2d 822, 824 (Tex. App.–San Antonio 1998, pet. ref'd).

In determining whether an individual was in custody, the ultimate inquiry centers on whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Lewis v. State*, 72 S.W.3d 704, 707 (Tex. App.–Fort Worth 2002, pet. ref'd) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam)). The determination depends on the objective circumstances, not on the subjective views of either the interrogating officers or the person being questioned. *Id.* In addition, the determination is made on an ad hoc basis. *Id.* (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). Custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.* An "arrest" occurs "when

---

[2] The "fruit of the poisonous tree" doctrine provides that evidence otherwise admissible but discovered as a result of an earlier violation is excluded as tainted. *See Missouri v. Seibert*, 542 U.S. 600, 612 (2004). However, "the court in *Elstad* rejected . . . the fruits doctrine for analyzing the admissibility of a subsequent warned confession following 'an initial failure . . . to administer the warnings required by *Miranda*.'" *Id.* at 612 n.4 (quoting *Or. v. Elstad*, 470 U.S. 298, 300 (1985)). In fact, "'a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will,' did not 'so tain[t] the investigatory process . . . .'" *Id.* (quoting *Elstad*, 470 U.S. at 309).

a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000). An arrest is complete only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with a formal arrest." *Id.* (citing *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Circ. 1988)). The subjective intent of either the police officer or the defendant is irrelevant. *Id.* at 773-74.

Flores testified that upon encountering Werlla leaving the restroom in room 114, he and Ybarra handcuffed Werlla and placed him in a chair in a doorway. After being handcuffed, Werlla asked Flores why he was being detained, and Flores informed Werlla about the parole warrant from Austin. Clearly, Werlla was not free to leave. Moreover, the parties do not dispute the fact that Werlla was in custody. We must now determine whether Werlla was entitled to *Miranda* warnings prior to the questioning conducted by Flores and Ybarra.

## b. *Miranda* **Warnings**

*Miranda* holds that when a criminal suspect is placed in custody, law enforcement personnel must comply with certain procedural safeguards in order to protect the suspect's privilege against compulsory self-incrimination under the Fifth Amendment. *See Miranda*, 384 U.S. at 444; *see also* U.S. CONST. amend. V. *Miranda* and its progeny hold that incriminating statements made by the accused are inadmissible if the authorities have not given the requisite warnings and the accused has not waived these rights. *See Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).

6

However, *Miranda*'s safeguards apply only when a suspect is placed in custody and interrogated by police. *Id.* at 300; *Jones v. State*, 795 S.W.2d 171, 174-75 (Tex. Crim. App. 1990). Custodial interrogation for purposes of *Miranda* includes both express questioning, and also words or actions that, given the officers' knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to "have . . . the force of a question on the accused," and therefore are reasonably likely to elicit an incriminating response. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (citations omitted); *Jones*, 795 S.W.2d at 174. The latter part of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.[3] *Innis*, 446 U.S. at 301.

Not all post-arrest police questioning can be classified as interrogation. *See Jones*, 795 S.W.2d at 174 n.3.[4] Statements given freely and voluntarily are admissible in evidence. *Miranda*, 384 U.S. at 478. In distinguishing situations which require *Miranda*'s safeguards, the *Miranda* court pointed to isolation and intimidation as key aspects of an interrogation that undermine an individual's ability to speak voluntarily. *Id.* at 449-51. When an accused in custody spontaneously volunteers information that is not in response to earlier interrogation by authorities, the statement is admissible even though not recorded because it is not the product of custodial interrogation. *Stevens v. State*, 671 S.W.2d 517,

---

[3] The State argues that the questioning of Werlla was done "solely . . . to establish ownership of defendant's belongings." However, this argument fails because we must focus on the perceptions of Werlla, not the intent of the police. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

[4] The Texas Court of Criminal Appeals enumerated different broad categories which do not constitute interrogation: routine inquiries, questions incident to booking, general questions such as "what happened" upon arrival at the scene, and questions mandated by public safety concerns. *Jones v. State*, 795 S.W.2d 171, 174 n.3. For example, asking a DWI suspect "[w]here are you going" does not constitute interrogation. *Massie v. State*, 744 S.W.2d 314 (Tex. App.–Dallas 1988, pet. ref'd). Moreover, merely asking a suspect about the location of the murder weapon does not constitute interrogation. *DeLeon v. State*, 758 S.W.2d 621, 624-25 (Tex. App.–Houston [14th Dist.] 1988, no pet.).

7

520 (Tex. Crim. App. 1984).

Article 38.22 of the code of criminal procedure codifies both *Miranda*'s system of protecting a suspect against self-incrimination and its distinction between voluntary statements and compelled confessions. TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2, 3, 5 (Vernon 2005); *see State v. Waldrop*, 7 S.W.3d 836, 838 (Tex. App.–Austin 1999, no pet.). Article 38.22 prohibits the admission of a written or oral statement made as a result of custodial interrogation by an accused in a criminal proceeding without the warning required by *Miranda*. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a). However, section five of article 38.22 states that nothing in the article precludes the admission of a statement that is either (1) res gestae of the arrest or offense, (2) a statement that does not stem from custodial interrogation, or (3) a voluntary statement, whether or not the result of custodial interrogation. *Id.* § 5. If statements are not made as a result of custodial interrogation, the requirements of *Miranda* and article 38.22 do not apply. *See Waldrop*, 7 S.W.3d at 839; *Gruber v. State*, 812 S.W.2d 368, 371 (Tex. App.–Corpus Christi 1991, pet. ref'd) (holding that a statement which is volunteered and not the product of custodial interrogation is admissible). Thus, if Werlla's statements were not the result of custodial interrogation, they are admissible. *See Waldrop*, 7 S.W.3d at 839.

The State argues that the questioning conducted by Flores and Ybarra did not amount to a custodial interrogation. Specifically, the State contends that the questioning was attendant to Werlla's arrest. Moreover, the State asserts that Werlla voluntarily gave the officer consent to search his belongings and that the questioning pertained solely to the consent search of Werlla's belongings. We disagree.

At the suppression hearing, Flores testified that no *Miranda* warnings were ever

8

given to Werlla.  In addition, Flores testified to the following:

Q: [The State]     Now, Officer Flores, you're saying after he was handcuffed, did you speak with the Defendant?

A: [Flores]     When—once he was handcuffed he asked [for the] reason for us being there and we stated that he was wanted out of the parole board and he said okay.

Q:     And did you ask him anything else?

A:     We asked for a consent to search his properties, his belongings.

Q:     And what was his response?

A:     "Go ahead."

. . . .

Q:     And did you search all the items in the room?

A:     We searched everything that belonged to him.

Q:     How did you—I'm sorry, how did you know which items belonged to him?

A:     We would ask if it was his and he would state yes or no.

Q:     Okay.  And on some of the items that he said were his, did you find anything out of the ordinary?

A:     Yes ma'am, [an] article of clothing he had was a pair of jeans.  We found—I found a white rock-like substance through all the training experiences known to be crack cocaine.  It was in plain view on top of his pants in his bedroom.

Q:     But you—had you seen those items—had you seen the crack before you started looking through his clothes?

A:     Yes, ma'am, it was on top of the clothes.

Flores's testimony indicated that Werlla was asked whether the pair of pants were

his after Flores had viewed the crack cocaine on top of the pants.  Therefore, Flores's

9

question was intended to determine whether Werlla owned the pants and whether the crack cocaine was Werlla's. This conclusion is further supported by Flores's admission that Werlla was not asked later whether the crack cocaine was his. We conclude that the line of questioning regarding the ownership of the pants constituted a custodial interrogation of Werlla conducted for the purpose of eliciting an incriminating response. *See Innis*, 446 U.S. at 301; *Russell v. State*, 215 S.W.3d 531, 535, 36 (Tex. App.–Waco 2007, pet. ref'd); *see also Zhi Jun Xu v. State*, 191 S.W.3d 210, 215-16 (Tex. App.–San Antonio 2005, no pet.). This conduct is not permitted because the officers did not read *Miranda* warnings to Werlla prior to the questioning. *See Miranda*, 384 U.S. at 444; *see also Stansbury*, 511 U.S. at 322 ("[A] person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'"). We therefore conclude that the trial court did not abuse its discretion in suppressing Werlla's statement with respect to ownership of the pants and the crack cocaine.[5] Accordingly, we overrule the State's sole issue.

## V. CONCLUSION

We affirm the judgment of the trial court with respect to Werlla's statement regarding

---

[5] Neither the trial court's order granting Werlla's motion to suppress evidence regarding the search of the hotel room, nor the trial court's findings of fact or conclusions of law reference the admissibility of crack cocaine into evidence. The record does not indicate that Werlla's consent to search was the product of coercion. Therefore, we cannot say that the seizure of the crack cocaine from the hotel room should have been suppressed. *See U.S. v. Patane*, 542 U.S. 630, 633 (2004) (holding that a failure to give a suspect *Miranda* warnings did not require the suppression of physical fruits of the suspect's unwarned but voluntary statement); *see also Baker v. State*, 956 S.W.2d 16, 22 (Tex. Crim. App. 1997) (stating that the "fruit of the poisonous tree" doctrine only "requires suppressing the fruits of a defendant's statement only when the statement was obtained through actual coercion"); *Rodriguez v. State*, 191 S.W.3d 428, 456-57 (Tex. App.–Corpus Christi 2006, pet. ref'd).

the ownership of the pants and the crack cocaine.  Werlla's appellate attorney has asked permission to withdraw as counsel.  We grant the motion to withdraw, and we order counsel to notify Werlla of the disposition of this appeal and the availability of discretionary review.  *See Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997) (per curiam).


                                                DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion on Rehearing delivered
and filed this the 4th day of December, 2008.