# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00045-CR

**Aureliano Salazar, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW OF BURNET COUNTY
### NO. M-21014, HONORABLE W. R. SAVAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Aureliano Salazar was arrested and charged with driving while intoxicated, second offense. After the trial court overruled his motion to suppress, Salazar pled no contest to the charge. The trial court sentenced him to one year's imprisonment, probated for two years, and to a $2,000 fine, partially probated. On appeal, Salazar contends in two issues that the court erred in denying his motion to suppress, arguing that (1) he should have been read his warnings at the scene before the officer asked him whether he had been drinking and (2) the warnings he was given at the scene were insufficient and he should have been read his rights a second time at the police station. We affirm the trial court's judgment of conviction.

Department of Public Safety Trooper Franklin Randolph, III testified that he stopped the car that Salazar was driving because the car had an expired registration sticker.[1] When Randolph

---

[1] The traffic stop and later interview at the police station were recorded, and one videotape containing both the stop and the station interview was introduced into evidence during the hearing on Salazar's motion to suppress.

asked for Salazar's driver's license, Salazar said he did not have one. Randolph testified that he noticed that Salazar's speech was slurred, his eyes were glassy, and he had a strong odor of alcoholic beverage on his breath, all of which led Randolph to believe Salazar had been drinking. Randolph asked Salazar to step out of the car and to move to the rear of the car for further evaluation. After discovering in the back seat a cooler containing cans of beer, two of which were open and cold to the touch, Randolph asked Salazar if he had been drinking. Salazar responded that he had drunk four or five beers. Randolph then performed the horizontal gaze nystagmus (HGN) test and concluded that Salazar was impaired, placing him under arrest for DWI. After handcuffing Salazar and placing him in the police car, Randolph read Salazar his statutory *Miranda* rights,[2] and Salazar stated that he understood his rights. At the police station, Salazar performed four sobriety tests and was further interviewed by Randolph. Randolph asked Salazar a series of questions from a form entitled, "DWI Interview with Legal Warnings," writing Salazar's verbal answers on the form. Randolph then handed Salazar the form, the top of which states a criminal defendant's legal rights, told him that he had written the answers Salazar had just provided, and asked Salazar to sign it. Salazar took the form and signed it quickly. Randolph did not read Salazar his rights during the interview or sobriety tests at the police station.

In his first issue, Salazar argues that because Randolph already had a suspicion that Salazar was intoxicated and because Salazar was not free to leave the scene while being questioned, Randolph should have read Salazar his rights before asking if he had been drinking.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West 2005) (codifying *Miranda*).

Our analysis in this issue is controlled squarely by settled law as stated in *State v. Stevenson*, 958 S.W.2d 824 (Tex. Crim. App. 1997); *see State v. Waldrop*, 7 S.W.3d 836, 839-40 (Tex. App.—Austin 1999, no pet.) (applying *Stevenson*). "[A] traffic stop does not constitute 'custody' for *Miranda* purposes." *Stevenson*, 958 S.W.2d at 828 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)); *see Berkemer*, 468 U.S. at 436, 439-40 ("a traffic stop significantly curtails the 'freedom of action' of the driver," and "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so," but "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*"). Courts determine whether a noncustodial event has transformed into a custodial interrogation by looking at whether the officer had probable cause to arrest, whether the officer had a subjective intent to hold the defendant, the defendant's subjective belief as to the status of his freedom, and whether the focus of the investigation had centered on the defendant. *Stevenson*, 958 S.W.2d at 826, 828-29. Those factors "are relevant only to the extent that they are manifested to the suspect through the words and actions of law enforcement officials; 'the custody determination is based entirely upon objective circumstances.'" *Id*. at 829 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996)); *see Dowthitt*, 931 S.W.2d at 254 ("factors two and four [officer's subjective intent and focus of investigation] have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials").

As in *Waldrop*, Salazar was not handcuffed or under arrest at the time he was asked to step out of the car and talk to Randolph. 7 S.W.3d at 837, 839. Randolph knew that at least two traffic offenses had been committed, driving without a license and expired registration, and

3

testified that he thought Salazar might have been drinking. Randolph conducted a brief investigation, looking inside the car and asking Salazar whether he had consumed any alcoholic beverages. After Salazar answered affirmatively, Randolph conducted the HGN test and reached the conclusion that Salazar was impaired. He then placed Salazar under arrest and read him his rights. These facts are substantially the same as in *Waldrop*. *See id.* at 839-40. Salazar was not in police custody or subject to a custodial interrogation when he voluntarily told Randolph he had consumed several beers. *See id.* Thus, the trial court properly denied Salazar's motion to suppress his statements made to Randolph made during the traffic stop. *See id.* We overrule Salazar's first issue.

In his second issue, Salazar asserts that Randolph violated article 38.22 of the code of criminal procedure "in that he failed to (1) ensure that Salazar knew what his rights were and that Salazar knowingly, intelligently, and voluntarily waived those rights" or (2) inform Salazar of his statutory warnings at the station before conducting the interview.

Article 38.22 requires that before being subjected to a custodial interrogation, a criminal defendant be informed of his *Miranda* rights. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (West 2005). It does not require that a defendant be read his rights multiple times at different stages of an arrest or interrogation, nor does it require a written warning rather than a verbal recitation of his rights. *See id.* The videotape of Salazar's arrest and subsequent interrogation at the police station shows that Randolph read Salazar his rights after informing him that he was under arrest for DWI, handcuffing him, and placing him in the police car. Salazar told Randolph that he understood his rights. Thus, Randolph satisfied the requirements of article 38.22 and was not

4

required to read Salazar's rights a second time at the station or to ask Salazar to read the warnings written on the DWI interview form before conducting the interview. Furthermore, the top of the one-page form that Salazar signed at the police station contains the article 38.22 warnings and states, "The above legal warnings were either read by me or to me. I understand each of these rights and agree to waive (give up) these rights and answer the following questions." At no time during the drive to the police station or the interview at the station did Salazar ever refer to his rights or in any way indicate that he wished to remain silent, consult with a lawyer, or terminate the interview. We hold that Salazar's article 38.22 rights were not violated and that the trial court properly denied his motion to suppress his statements made at the police station. *See Garcia v. State*, 919 S.W.2d 370, 386-87 (Tex. Crim. App. 1996) (op. on reh'g) (sufficient warnings when defendant initialed warnings and waiver of rights and was verbally informed of rights); *Sosa v. State*, 769 S.W.2d 909, 916 (Tex. Crim. App. 1989) (sufficient warnings when warnings that substantially complied with statute were read to defendant, who then signed waiver form). We overrule Salazar's second issue.

Having overruled both of Salazar's issues, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: June 5, 2009

Do Not Publish