TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00045-CR






Aureliano Salazar, Appellant


v.


The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW OF BURNET COUNTY

NO. M-21014, HONORABLE W. R. SAVAGE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Aureliano Salazar was arrested and charged with driving while intoxicated,
second offense. After the trial court overruled his motion to suppress, Salazar pled no contest to the
charge. The trial court sentenced him to one year's imprisonment, probated for two years, and to a
$2,000 fine, partially probated. On appeal, Salazar contends in two issues that the court erred in
denying his motion to suppress, arguing that (1) he should have been read his warnings at the scene
before the officer asked him whether he had been drinking and (2) the warnings he was given at the
scene were insufficient and he should have been read his rights a second time at the police station. 
We affirm the trial court's judgment of conviction. 

 Department of Public Safety Trooper Franklin Randolph, III testified that he stopped
the car that Salazar was driving because the car had an expired registration sticker. (1) When Randolph
asked for Salazar's driver's license, Salazar said he did not have one. Randolph testified that he
noticed that Salazar's speech was slurred, his eyes were glassy, and he had a strong odor of alcoholic
beverage on his breath, all of which led Randolph to believe Salazar had been drinking. Randolph
asked Salazar to step out of the car and to move to the rear of the car for further evaluation. After
discovering in the back seat a cooler containing cans of beer, two of which were open and cold to
the touch, Randolph asked Salazar if he had been drinking. Salazar responded that he had drunk four
or five beers. Randolph then performed the horizontal gaze nystagmus (HGN) test and concluded
that Salazar was impaired, placing him under arrest for DWI. After handcuffing Salazar and placing
him in the police car, Randolph read Salazar his statutory Miranda rights, (2) and Salazar stated that
he understood his rights. At the police station, Salazar performed four sobriety tests and was further
interviewed by Randolph. Randolph asked Salazar a series of questions from a form entitled,
"DWI Interview with Legal Warnings," writing Salazar's verbal answers on the form. Randolph
then handed Salazar the form, the top of which states a criminal defendant's legal rights, told him
that he had written the answers Salazar had just provided, and asked Salazar to sign it. Salazar took
the form and signed it quickly. Randolph did not read Salazar his rights during the interview or
sobriety tests at the police station.

 In his first issue, Salazar argues that because Randolph already had a suspicion that
Salazar was intoxicated and because Salazar was not free to leave the scene while being questioned,
Randolph should have read Salazar his rights before asking if he had been drinking.

 Our analysis in this issue is controlled squarely by settled law as stated in State
v. Stevenson, 958 S.W.2d 824 (Tex. Crim. App. 1997); see State v. Waldrop, 7 S.W.3d 836, 839-40
(Tex. App.--Austin 1999, no pet.) (applying Stevenson). "[A] traffic stop does not constitute
'custody' for Miranda purposes." Stevenson, 958 S.W.2d at 828 (citing Berkemer v. McCarty,
468 U.S. 420, 439-40 (1984)); see Berkemer, 468 U.S. at 436, 439-40 ("a traffic stop significantly
curtails the 'freedom of action' of the driver," and "few motorists would feel free either to disobey
a directive to pull over or to leave the scene of a traffic stop without being told they might do so,"
but "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily
detained pursuant to such stops are not 'in custody' for the purposes of Miranda"). Courts determine
whether a noncustodial event has transformed into a custodial interrogation by looking at whether
the officer had probable cause to arrest, whether the officer had a subjective intent to hold the
defendant, the defendant's subjective belief as to the status of his freedom, and whether the focus
of the investigation had centered on the defendant. Stevenson, 958 S.W.2d at 826, 828-29. Those
factors "are relevant only to the extent that they are manifested to the suspect through the words and
actions of law enforcement officials; 'the custody determination is based entirely upon objective
circumstances.'" Id. at 829 (quoting Dowthitt v. State, 931 S.W.2d 244, 254-55 (Tex. Crim. App.
1996)); see Dowthitt, 931 S.W.2d at 254 ("factors two and four [officer's subjective intent and focus
of investigation] have become irrelevant except to the extent that they may be manifested in the
words or actions of law enforcement officials"). 

 As in Waldrop, Salazar was not handcuffed or under arrest at the time he was asked
to step out of the car and talk to Randolph. 7 S.W.3d at 837, 839. Randolph knew that at least
two traffic offenses had been committed, driving without a license and expired registration, and
testified that he thought Salazar might have been drinking. Randolph conducted a brief
investigation, looking inside the car and asking Salazar whether he had consumed any alcoholic
beverages. After Salazar answered affirmatively, Randolph conducted the HGN test and reached the
conclusion that Salazar was impaired. He then placed Salazar under arrest and read him his rights. 
These facts are substantially the same as in Waldrop. See id. at 839-40. Salazar was not in
police custody or subject to a custodial interrogation when he voluntarily told Randolph he had
consumed several beers. See id. Thus, the trial court properly denied Salazar's motion to
suppress his statements made to Randolph made during the traffic stop. See id. We overrule
Salazar's first issue.

 In his second issue, Salazar asserts that Randolph violated article 38.22 of the code
of criminal procedure "in that he failed to (1) ensure that Salazar knew what his rights were and that
Salazar knowingly, intelligently, and voluntarily waived those rights" or (2) inform Salazar of his
statutory warnings at the station before conducting the interview. 

 Article 38.22 requires that before being subjected to a custodial interrogation, a
criminal defendant be informed of his Miranda rights. Tex. Code Crim. Proc. Ann. art. 38.22,
§§ 2, 3 (West 2005). It does not require that a defendant be read his rights multiple times at different
stages of an arrest or interrogation, nor does it require a written warning rather than a verbal
recitation of his rights. See id. The videotape of Salazar's arrest and subsequent interrogation at the
police station shows that Randolph read Salazar his rights after informing him that he was under
arrest for DWI, handcuffing him, and placing him in the police car. Salazar told Randolph that he
understood his rights. Thus, Randolph satisfied the requirements of article 38.22 and was not
required to read Salazar's rights a second time at the station or to ask Salazar to read the warnings
written on the DWI interview form before conducting the interview. Furthermore, the top of the one-page form that Salazar signed at the police station contains the article 38.22 warnings and states,
"The above legal warnings were either read by me or to me. I understand each of these rights and
agree to waive (give up) these rights and answer the following questions." At no time during the
drive to the police station or the interview at the station did Salazar ever refer to his rights or in any
way indicate that he wished to remain silent, consult with a lawyer, or terminate the interview. We
hold that Salazar's article 38.22 rights were not violated and that the trial court properly denied his
motion to suppress his statements made at the police station. See Garcia v. State, 919 S.W.2d 370,
386-87 (Tex. Crim. App. 1996) (op. on reh'g) (sufficient warnings when defendant initialed
warnings and waiver of rights and was verbally informed of rights); Sosa v. State, 769 S.W.2d 909,
916 (Tex. Crim. App. 1989) (sufficient warnings when warnings that substantially complied with
statute were read to defendant, who then signed waiver form). We overrule Salazar's second issue.

 Having overruled both of Salazar's issues, we affirm the trial court's judgment
of conviction.


 ___________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: June 5, 2009

Do Not Publish
1. The traffic stop and later interview at the police station were recorded, and one videotape
containing both the stop and the station interview was introduced into evidence during the hearing
on Salazar's motion to suppress. 
2. See Miranda v. Arizona, 384 U.S. 436 (1966); see also Tex. Code Crim. Proc. Ann.
art. 38.22, § 2(a) (West 2005) (codifying Miranda).