Cy SCHAUM, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-91-00495-CR.

Court of Appeals of Texas, Dallas.

June 23, 1992.

Robert Kelly Pace, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before STEWART, OVARD and CHAPMAN, JJ,

## OPINION

OVARD, Justice.

Cy Schaum was convicted by a jury of the offense of driving while intoxicated (DWI). The trial court assessed his punishment at 730 days in jail and a $2500 fine. Schaum appeals the conviction, contending the trial court erred in allowing evidence of his chemical test refusal. We affirm the judgment of the trial court.

Schaum was involved in a traffic accident which he caused by running a red light. Officers at the accident scene determined that, in their opinion, Schaum had been driving while intoxicated and placed him under arrest. Because he was injured in the accident and refused treatment by the paramedics, the officers took Schaum to Parkland Hospital for treatment. While at the hospital both Officer Blankenbaker and Officer Hay requested Schaum to take a blood test. He refused. They orally informed him that a refusal could result in his license being suspended. They gave no written warning of the consequences of such a refusal.

In his single point of error, Schaum contends the trial court erred in allowing evidence of his refusal before the jury because the statutorily required written notice was never given to him. We agree that this was error. *See Hogue v. State*, 752 S.W.2d 585, 589 (Tex.App.—Tyler 1987, pet. ref'd). We must first determine if this error requires automatic reversal or whether it is subject to a harmless error analysis.

## APPLICABLE LAW

The applicable statute is article 6701*l*–5 of the Texas Revised Civil Statutes. The pertinent portions of that statute are as follows:

Sec. 2.(b) Before requesting a person to give a [blood or breath] specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a subsequent prosecution, and that the person's license, permit, or privilege to operate a motor vehicle will be automatically suspended for 90 days after the date of adjournment of the hearing provided for in Subsection (f) of this section, whether or not the person is subsequently prosecuted as a result of the arrest.

. . . .

(c) The officer shall provide the person with a written statement containing the information required by Subsection (b) of this section. If the person refuses the request of the officer to give a specimen, the officer shall request the person to sign a statement that the officer requested that he give a specimen, that he was informed of the consequences of not giving a specimen, and that he refused to give a specimen.

. . . .

Sec. 3.(g) If the person refuses a request by an officer to give a specimen of breath or blood, whether the refusal was express or the result of an intentional failure of the person to give the specimen, that fact may be introduced into evidence at the person's trial.

TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, §§ 2(b), (c), 3(g) (Vernon Supp.1992). Under the statute, both oral *and* written notice of the consequences of a refusal to give police officers either a breath or blood specimen is mandatory. The Court of Criminal Appeals has provided guidance for determining which mandatory statutes are immune to a harmless error analysis. *See Sodipo v. State*, 815 S.W.2d 551, 554–55 (Tex.Crim. App.1990). A harm analysis is appropriate where the mandatory provision is such that the record may contain concrete data from which an appellate court can meaningfully gauge the likelihood that the error did or did not contribute to the conviction. *Id.* Because the record supplies sufficient data to enable us to make this determination, we

conclude that the statute at issue here should be subjected to a harm analysis.

■ In determining whether the officers' non-compliance with the statute requires reversal, we look at the entire record in a neutral, impartial and even-handed manner. *Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim.App.1989). We do not determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt. *Id.* at 587. We are to calculate, to the extent possible, the probable impact of the error on the jury in light of the existence of the other evidence. *Id.* In applying the harmless error rule we shall examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State and its probable collateral implications. *Id.* We also consider how much weight a juror would probably place on the error and whether declaring the error harmless would encourage the State to repeat it. *Id.* We are not concerned with whether the jury reached the correct result, but rather whether the jury was able to properly apply law to facts in order to reach a verdict. *Id.* at 588. We are to determine whether, beyond a reasonable doubt, the error made no contribution to the conviction. Tex. R.App.P. 81(b)(2).

Schaum does not explain how the error harmed him. Instead, he argues that the determination of whether he was harmed cannot be made in this case. He relies on the facts that he sustained a head injury requiring hospitalization and that the police officers never made a video as is the usual practice in DWI arrests. He claims "there is insufficient evidence available in the record for this Court to make a determination that the jury did not rely to the large extent on [his] refusal" in making its decision. In essence, he asks us to presume harm although it is his burden to bring forward a record showing harm. Tex. R.App.P. 50(d).

## TESTIMONY

Wallace Hall drove the truck Schaum ran into. He testified that just after the accident, he first attended to his wife who was injured and then walked over to Schaum's vehicle to determine whether Schaum had been injured. Schaum was still seated in the driver's seat of his pick up. Hall saw beer cans in the back of Schaum's pick up and on the pavement by the pick up.

Edward Solis witnessed the accident and stopped to render aid. He testified that, based on his observances at the scene and past experiences, in his opinion Schaum was intoxicated. Solis stated that he has come in contact with intoxicated persons many times in the past.

Officer Albert Hay, a nineteen-year veteran police officer who investigated the accident, testified that he saw beer cans in the back of Schaum's truck and on the pavement. He stated that Wallace Hall had wanted Schaum arrested because Hall felt Schaum was intoxicated. Hay testified that Schaum refused to be treated by the paramedics at the scene, and while in the squad car en route to Parkland, Schaum told the police officers that they did not like him because he was intoxicated. Hay stated that Schaum smelled of alcohol and had slurred speech and bloodshot eyes. He had come into contact with many intoxicated persons during his years on the police force. Hay opined Schaum was intoxicated.

Dallas Police Officer Randall Blankenbaker was also at the scene of the accident. He testified that Schaum had slurred speech and bloodshot eyes and smelled of alcohol. Blankenbaker stated that Schaum had attempted to flee from the accident scene. Blankenbaker testified that while en route to Parkland, Schaum told the officer he "maybe had a little bit too much to drink." Blankenbaker also believed Schaum to be intoxicated.

Dr. Brad Marple was on duty in the emergency room at Parkland on the night of the accident and examined Schaum. He stated that he had no independent recollection of the examination and his testimony was based solely on medical records. He testified that the records contained no mention of intoxication, but that he would only have made such a notation if it were medi-

cally important. Schaum's only injuries consisted of two lacerations near his left eye, which Marple characterized as relatively minor injuries. He found no signs of significant head trauma or concussion. Marple stated that he could not testify as to whether Schaum was intoxicated.

## ANALYSIS

 The record shows it is standard police procedure to take any individual arrested for DWI to the county jail, to videotape the accused as certain tests are performed and, if that person refuses to give a breath or blood sample, to provide the arrestee a preprinted form with the statutory warning printed on it and a place for his signature. However, the jail officers will not accept prisoners who need immediate medical attention. Consequently, the officers had to take Schaum to Parkland Hospital since he was injured and he refused to be treated by paramedics at the accident scene. Blankenbaker explained that there were no warning forms available to them at the hospital. Blankenbaker gave Schaum a portion of the warning orally. Thus, the failure to give the written warning was not deliberate and Schaum cannot, and does not, claim he was not warned of negative consequences of a refusal.

At trial, only Blankenbaker testified about the refusal, Hay did not. The testimony did not emphasize Schaum's refusal. Rather, the prosecutor focused on the warnings that were given and why the officers believed Schaum to be intoxicated. The record before us does not include jury arguments. We do not know if Schaum's refusal was mentioned during jury argument. We presume the portion of the statement of facts which is not before us supports the judgment. *See* TEX.R.APP.P. 53(d).

The failure of the officers to give Schaum the written warning was not deliberate, but a result of the unique circumstances of this case. Schaum was given an oral warning in partial fulfillment of the statute. It is unlikely our finding of harmless error will encourage the State to continue to disregard the statute.

In light of the evidence of guilt, we conclude that knowledge of Schaum's refusal to take the test had no discernible impact on the jury. All witnesses who stated they observed Schaum at the scene believed he was intoxicated. Schaum himself admitted to the officers that he was intoxicated.

Schaum's refusal to take the test was mentioned only once during testimony and not emphasized. We have no way of knowing whether it was emphasized during jury arguments, but must presume the missing portion of the statement of facts supports the judgment.

We conclude that the jury was able to properly apply law to facts in order to reach a verdict. We determine, beyond a reasonable doubt, that the error made no contribution to the conviction. TEX. R.APP.P. 81(b)(2). We overrule Schaum's sole point of error.

We affirm the judgment of the trial court.