

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00339-CR

ANN BUCARO                                                          APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY
TRIAL COURT NO. CR-2013-05651-B

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

### I. Introduction

Appellant Ann Bucaro filed a motion for rehearing. We deny the motion but withdraw our prior opinion of June 25, 2015, and substitute the following in its place.

---

[1]See Tex. R. App. P. 47.4.

In three issues, Bucaro appeals her conviction for driving while intoxicated. She argues that the trial court erred in overruling her motion to suppress and that portions of the Implied Consent Law violate the Fourth Amendment. We affirm.

## II. Background

On January 12, 2013, The Colony police pulled Bucaro over for driving her vehicle off of the roadway, over a curb, and onto a sidewalk. Officer Mark Hamm was called to the scene to assist in the investigation of the possible offense of driving while intoxicated (DWI).

When Officer Hamm arrived, he performed standardized field sobriety tests on Bucaro and, as a result, concluded that she was intoxicated. He then arrested Bucaro and took her to The Colony Jail.

At the jail, Officer Hamm handed Bucaro a copy of the DIC-24[2] form and asked her to follow along as he read it aloud. After Officer Hamm finished reading the form, Bucaro collapsed onto the floor. Officer Hamm immediately called for the paramedics and then helped Bucaro, who told Officer Hamm that she felt "lightheaded," into a chair. During these events, Bucaro never lost consciousness.

---

[2]The DIC-24 is the Texas Department of Public Safety's standard form containing the written warnings required by the transportation code to be read to an individual arrested for a DWI before a peace officer requests a voluntary blood or breath sample from a person. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2014); *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

While waiting for the medics to arrive, Officer Hamm showed Bucaro the DIC-24 form and asked if she remembered holding it and following along when he read it to her earlier. She shook her head, indicating that she did not. Just prior to the paramedic's arrival, Bucaro's breathing became very heavy. However, the medics who evaluated Bucaro determined that she was not in need of any further medical attention.

After the medics left, Officer Hamm once again asked Bucaro if she remembered the DIC-24 form, and she indicated that she did not. Officer Hamm then read the DIC-24 to Bucaro a second time and afterwards asked if she understood. Once again, she shook her head, indicating that she did not. When Officer Hamm asked her if she had a question, Bucaro just shook her head. When he asked Bucaro what part of the form she did not understand, Bucaro again just shook her head. Officer Hamm then reread the second paragraph[3] and attempted to break it down into simpler terms. He explained to her that he was going to ask her for a breath specimen and she needed to understand that "if [she] says no, they can use it against her in court and [her] license will be

---

[3]The second paragraph of the DIC-24 form reads as follows: "If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution. Your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 180 days, whether or not you are subsequently prosecuted for this offense."

suspended for not less than six months." Officer Hamm read the entire DIC-24 form to Bucaro a third time,[4] and she consented to giving a breath specimen.

At the hearing on the motion to suppress, the trial court heard testimony from Officer Hamm and Bucaro, viewed the intoxilizer room video footage and the dashboard camera footage, and listened to the audiotape of Officer Hamm's body microphone.

Officer Hamm testified that Bucaro's consent was freely and voluntarily given and that he never got the impression she did not want to give the sample. He testified that there was no coercion, no force, no intimidation, and no threats—he asked her to provide a sample, she said yes, and when it was time to provide the sample she did.

Bucaro testified that she thought that she had no option but to take the test because if she refused she would not be able to drive to work and she might lose her job. However, on cross-examination, Bucaro admitted that she never told Officer Hamm that she did not want to give a breath specimen and that she never refused to provide one. She further admitted that she was not threatened or physically forced.

The trial court denied the motion to suppress and entered written findings of fact and conclusions of law.

---

[4]Officer Hamm testified that he read the complete DIC-24 form to Bucaro three times.

4

### III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact-findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.

5

Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## IV. Analysis

In her first two issues, Bucaro states that the trial court erred in denying her motion to suppress because (1) Bucaro did not voluntarily consent and (2) the State failed to sustain its burden of proof. In her last issue, Bucaro asserts that portions of the Implied Consent Law are inherently coercive and, therefore, violate the Fourth Amendment's prohibition against unreasonable searches and seizures.

## A. Voluntary Consent

In her first and third issue, Bucaro asserts that she did not voluntarily consent to provide a breath specimen because she was coerced. In both issues, Bucaro argues that the Implied Consent Law, i.e., the DWI statutory warnings, are inherently coercive. Specifically, she asserts that by "threatening that if Bucaro refused to provide a specimen . . . she would lose her driving privileges and . . . her refusal would be used as evidence against her at her trial, the officer applied psychological pressure . . . that caused her will to be overborne and her capacity for self-determination to be critically impaired."

Any person arrested for DWI is deemed to have given consent to submit to providing a specimen of breath or blood for determining alcohol concentration or the presence of a controlled substance. Tex. Transp. Code § 724.011(a) (West 2011). Nevertheless, a person retains an absolute right to refuse a test. *Id.*

6

§ 724.013 (West 2011). In other words, "'[C]onsent being implied by law, a driver may not legally refuse. A driver can, however, physically refuse to submit, and, in recognition of that practical reality, the implied consent law forbids the use of physical force to compel submission.'" *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988) (quoting *State v. Spencer*, 305 Or. 59, 750 P.2d 147, 153 (1988)), *overruled on other grounds by McCambridge v. State*, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989).

A driver's consent to a breath or blood test must be free and voluntary— i.e., free from physical or psychological pressure from law enforcement. *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011). In order to determine whether consent was given voluntarily, the fact-finder must consider the totality of the circumstances. *Id.* at 459. "The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Id.* "Accordingly, it follows that, because the fact finder must consider all of the evidence presented, no one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012).

Before an officer may request a breath or blood sample from a person arrested for DWI, the officer is *required* to inform the person that a refusal to provide a specimen (1) may be admissible in subsequent prosecution and (2) will result in an automatic driver's license suspension. Tex. Transp. Code Ann.

7

§ 724.015(1), (2); *Schaum v. State*, 833 S.W.2d 644, 646 (Tex. App.—Dallas 1992, no pet.). "These warnings emphasize the importance of ensuring that the consent is given 'freely and with a correct understanding of the actual statutory consequences of refusal.'" *Duke v. State*, No. 02-02-00290-CR, 2003 WL 1564326, at *1 (Tex. App.—Fort Worth Mar. 27, 2003, no pet.) (mem. op., not designated for publication) (citations omitted).

While the court of criminal appeals has not directly addressed the question of whether the DIC-24 statutory warnings are inherently coercive, the court has considered whether extra-statutory warnings—warnings that exceed the required DIC-24 statutory warnings—are inherently coercive. *See Fienen*, 390 S.W.3d at 335; *Erdman v. State*, 861 S.W.2d 890, 893–94 (Tex. Crim. App. 1993), *overruled by Fienen*, 390 S.W.3d at 335. In *Fienen*, the court of criminal appeals held that extra-statutory warnings are not inherently coercive but that any coercive effect of warnings should be determined by considering the totality of the circumstances in each particular case, holding,

> . . . No statement—whether it refers to the consequences of refusing a breath test, the consequences of passing or failing a breath test, or otherwise—should be analyzed in isolation because its impact can only be understood when the surrounding circumstances are accounted for.
>
> . . . .
>
> . . . Although [the officer] conveyed what would happen in more definite terms than suggested by the (present) statute, she provided only the most basic information and did not linger or prolong the exchange by explaining in detail the intricacies of obtaining the search warrant (*e.g.,* that the blood search warrant

8

must be approved by a neutral and impartial magistrate and that the judge may sign the search warrant only if he believes that it is supported by probable cause).

390 S.W.3d at 335–36 (holding that under the totality of circumstances, the statements made by the officer were not coercive, "and if anything, Appellant had greater information on which to base his decision.").

Comparing the case at bar to *Fienen*, if the giving of the DIC-24 warnings *plus* the extra-statutory warnings present in *Fienen* were not inherently coercive, then the statutory warnings standing alone could not be inherently coercive. Applying *Fienen*, we hold that the giving of the DIC-24 warnings is not inherently coercive and does not violate the Fourth Amendment. We overrule Bucaro's first and third issues.

## B. Burden of Proof

In her second issue, Bucaro argues that based on the totality of the circumstances the State failed to meet its burden in proving that her consent was voluntary. Specifically, Bucaro asserts that the evidence shows that

at the time she agreed to provide a specimen of her breath Ms. Bucaro was under arrest, was in a police-dominated atmosphere at the jail and in the presence of several uniformed officers,[5] had not been warned of her rights under *Miranda* and article 38.22,[6] had not

---

[5]The video indicates that Officer Hamm was the only police officer in the room; the others were medical professionals.

[6]*Miranda* warnings are not required to be given before an individual is asked to give a breath specimen. *Floyd v. State*, 710 S.W.2d 807, 809 (Tex. App.—Fort Worth 1986), *pet. dism'd, improvidently granted*, 768 S.W.2d 307 (Tex. Crim. App. 1989).

9

directly and affirmatively been made aware that she could refuse to provide a specimen of her breath,[7] had not been made aware of legal options available to her whereby she could avoid losing her driving privileges, had suffered a panic attack that resulted in several minutes of hyperventilation, vacillated about whether to provide the specimen,[8] had been threatened with the use of her refusal to provide a specimen of breath as evidence of her guilt, in violation of her Fourth Amendment rights, and provided the specimen only after she had been repeatedly told that her refusal to provide a specimen would result in the suspension of her driver's [license] and would result in the use of her refusal as evidence at her trial.

It is the State's burden to prove voluntary consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 335. Here, the State introduced video from the intoxilizer room and testimony from Officer Hamm. According to the record, when asked by Officer Hamm if she would give a breath specimen, Bucaro agreed and then submitted to one. Viewing the evidence in the light most favorable to the trial court's findings, the State met its burden, and the trial court did not err by denying Bucaro's motion to suppress. We overrule Bucaro's second issue.

## V. Conclusion

Having overruled all of Bucaro's issues, we affirm the trial court's judgment.

---

[7]Officer Hamm read the DIC-24 form to Bucaro in full three separate times. As noted above, the form includes the following admonition: "*If you refuse* to give the specimen, *that refusal* may be admissible in a subsequent prosecution . . . ." [Emphasis added.]

[8]The record does not indicate that Bucaro equivocated in her decision to submit a breath specimen.

10

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 27, 2015